IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re )<br>)<br>THE MORTGAGE STORE, INC., )<br>)<br>     Debtor. )<br>_____ )<br>)<br>MANO-Y&M, LTD., a Texas limited )<br>partnership, )<br>)<br>     Appellant, )<br>)<br>     v. )<br>)<br>DANE S. FIELD, et al., )<br>)<br>     Appellees. )<br>_____ ) | CIVIL NO. 12-00653 JMS/KSC<br><br>ORDER AFFIRMING<br>BANKRUPTCY COURT'S<br>NOVEMBER 7, 2012 ORDER<br>GRANTING SUPPLEMENTAL<br>MOTION FOR SUMMARY<br>JUDGMENT AGAINST<br>DEFENDANT MANO-Y&M, LTD. |

## ORDER AFFIRMING BANKRUPTCY COURT'S NOVEMBER 7, 2012 ORDER GRANTING SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MANO-Y&M, LTD.

## I. INTRODUCTION

In January 2009, George W. Lindell ("Lindell"), principal of Debtor

The Mortgage Store, Inc. ("Mortgage Store" or "Debtor"), caused the Mortgage

Store to transfer $311,065.25 to pay for Lindell's purchase of real property from

Appellant Mano-Y&M, Ltd. ("Mano" or "Appellant").  Specifically, Lindell had

the Mortgage Store transfer the funds to Mano's attorney, The Law Offices of

Mark Freeland ("Freeland"), who then distributed the funds as required by Lindell

and Mano's HUD-1 Statement.  The Mortgage Store subsequently declared bankruptcy, and Trustee Dane S. Field ("Field" or "Trustee") brought this adversary proceeding asserting that this transfer is fraudulent and that Mano is liable for these funds.

In its September 29, 2012 Memorandum of Decision (the "September 29 Decision"), the bankruptcy court held that Mano was the initial transferee of the $311,065.25 and is therefore strictly liable for this amount.  The September 29 Decision reasoned that although the funds were transferred first from the Mortgage Store to Freeland, Mano had dominion over the funds at the time of the  transfer. The bankruptcy court's November 7, 2012 Order Granting Trustee's Supplemental Motion for Summary Judgment Against Mano and November 9, 2012 Judgment followed.

In this appeal, Mano argues that summary judgment was granted in error because Freeland was acting as escrow agent for both Lindell and Mano such that Mano did not have dominion over the funds when they were transferred to Freeland.  Rather, Mano asserts that Freeland held the funds on behalf of Lindell, such that Lindell was the initial transferee.  Based on the following, the court agrees with Trustee that there is no genuine issue of material fact and that Mano, not Lindell, had dominion of the funds at the time of transfer and thus AFFIRMS

2

the September 29 Decision and the subsequent November 9, 2012 Final Judgment.

## II. <u>BACKGROUND</u>

### A.   **Factual Background**

Lindell was the sole shareholder of the Mortgage Store from 1996 through 2008, and retained control over its finances after that time. *See* Doc. No. 13-1, Trustee Appendix ("TA") Ex. 1.  In its September 1, 2011 Memorandum Decision regarding Trustee's Motion for Partial Summary Judgment and Mano's Countermotion for Partial Summary Judgment (the "September 1, 2011 Decision"), the bankruptcy court determined that the Mortgage Store was run as a Ponzi scheme, and by June 20, 2007, it was insolvent. *Id.*  The September 1, 2011 Decision also found that the transfer at issue in this appeal -- the $311,065.25 from the Mortgage Store to purchase property for Lindell from Mano -- was fraudulent. *Id.*  The parties do not dispute these determinations; rather, the relevant issue on appeal is whether Mano was the initial transferee of these funds.  The court thus outlines the facts relevant to this issue:

### 1.   *The Contract for the Raymondville Plaza*

In December 2008, Lindell and Mano entered into a Real Estate Sales Contract (the "Contract") for Lindell to purchase from Mano real property in Texas known as the Raymondville Plaza.  *See* Doc. No. 12-7, Appellant's Appendix

("AA") Ex. G at ECF 11 of 179.  The Contract lists the "Seller" as Mano, and the "Buyer" as Lindell, with Paulrajan Manoharan signing on behalf of Mano, and Lindell signing on behalf of himself.  *Id.* at ECF 11, 26 of 179.  The Contract also lists Freeland as Mano's attorney and Sierra Title Company ("Sierra Title") as the title company.  *Id.* at ECF 11, 13 of 179.

The Contract outlines that the total purchase price is $2.2 million, which includes a seller-financed portion of $1.9 million, a cash portion of $300,000, and earnest money of $10,000.  *Id.* at ECF 13 of 179.  The Contract tasks Sierra Title with holding the earnest money and transmitting it to the appropriate party at the end of the "inspection period," which ends thirty days after the "effective date" of the Contract.  *Id.* at ECF 11, 19 of 179.  In turn, the Contract defines the effective date as the date "of the last of the signatures by Seller and Buyer as parties to this contract and by Title Company to acknowledge receipt of Earnest Money."  *Id.* at ECF 11 of 179.  Although the Contract (with a fax date of December 12, 2008) does not include dates of signature for Lindell and Mano, on December 16, 2008, Freeland forwarded the signed Contract and Lindell's earnest money of $10,000 to Sierra Title, *id.* at ECF 38 of 179, and Sierra Title responded that same day.  *Id.* at ECF 68 of 179.  As a result, the effective date of the Contract was no later than December 16, 2008.  The inspection period ended thirty days

4

later, January 15, 2009.

The end of the inspection period in turn impacted Lindell's termination rights under the Contract.  Specifically, Lindell had discretion to "terminate this contract for any reason by notifying Seller before the end of the Inspection Period.  If Buyer does not notify Seller of Buyer's termination of the contract before the end of the Inspection Period, Buyer waives the right to terminate this contract pursuant to this provision."  *Id.* at ECF 18 of 179.  Thus, Lindell's right to terminate ceased as of January 15, 2009, and had Lindell failed to perform any of his obligations under the contract after that date, Mano could seek specific performance.  *Id.* at ECF 23 of 179.

The Contract provides that the "closing date" will be ten days after the end of the inspection period, and will occur at Freeland's office.  *Id.* at ECF 14, 20 of 179.  The Contract outlines that at the closing, the parties are required to execute and deliver the Closing Documents, and Lindell must deliver the purchase price plus the other amounts he is obligated to pay under the Contract (*e.g.*, the various transaction costs including one-half of the escrow fee charged by Sierra Title) to Freeland.  *Id.* at ECF 20 of 179.  The Contract provides that Freeland will "disburse the Purchase Price and other funds in accordance with the parties' written instructions."  *Id.*

5

## 2.    *Events After the Contract*

Lindell did not terminate the Contract.  Rather, starting on January 19, 2009 the parties executed various Closing Documents, including, among other things:

• A January 19, 2009 Special Warranty Deed With Vendor's Lien ("Deed"), which was signed by Paulrajan Manoharan as Trustee on behalf of Mano on January 19, 2009, and signed by Yalini Manoharan as Trustee on behalf of Mano on January 20, 2009.  *Id.* at ECF 90-93 of 179.

• A January 19, 2009 Promissory Note for $1.9 million signed by Lindell.  *Id.* at ECF 97 of 179.

• A January 19, 2009 Deed of Trust signed by Lindell as grantor, to Freeland as Trustee for Mano.  *Id.* at ECF 101 of 179.

• A January 19, 2009 HUD-1 Statement signed by Lindell, Mano, and Freeland, who is listed as "Settlement Agent."  The HUD-1 Statement outlines, among other things, the sales price, forms of payment, and settlement charges.  *Id.* at ECF 131-35 of 179.  As to Lindell, these settlement charges include a $125 charge for "miscellaneous expenses" to Freeland, while as to Mano the charges include another $125 to Freeland, and an additional $6,981.74 to Freeland.  Above Freeland's signature, the

6

form provides that "[t]o the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction." *Id.* at ECF 132 of 179.

On January 20, 2009, The Mortgage Store transferred $311,065.25 -- the balance of the purchase price and costs owed by Lindell under the HUD-1 Statement -- to Freeland's Client Trust Account for client "MANO Y&M, Ltd." *Id.* at ECF 137-146 of 179.

On January 21, 2009, Freeland distributed the $311,065.25 from Freeland's Client Trust Account as outlined in the HUD-1 Statement. *See id.* at ECF 143 of 179.

## B.    Procedural Background

On November 12, 2010, the Mortgage Store filed a voluntary petition for Chapter 7 relief under the Bankruptcy Code. Field was subsequently appointed Trustee and commenced this adversary proceeding on December 3, 2010, asserting that the transfer to Mano was fraudulent in violation of 11 U.S.C. §§ 544(b) and 548(a)(1), and Hawaii Revised Statutes ("HRS") § 651C-4(a). *See* Doc. No. 12-1, AA Ex. A.

On an initial Motion for Summary Judgment by Trustee, the

bankruptcy court found that the transfer of $311,065.25 of the Mortgage Store's funds to Freeland was fraudulent, yet determined that genuine issues of material fact exist regarding whether Mano was an "initial transferee" or a "subsequent transferee" under 11 U.S.C. § 550(a).  *See* Doc. No. 13-1, TA Ex. 1.  On July 16, 2012, Trustee brought its Supplemental Motion for Summary Judgment, asserting that no genuine issue of material fact exists that Mano is an initial transferee.  Doc. No. 12-6, AA Ex. F.  Mano filed an Opposition on August 31, 2012, Doc. No. 12-9, AA Ex. I, and Trustee filed a Reply on September 7, 2012.  Doc. No. 12-12, AA Ex. L.

On September 27, 2012, the bankruptcy court entered its Memorandum of Decision explaining its reasoning for granting Trustee's Supplemental Motion for Summary Judgment.  Doc. No. 12-5, AA Ex. E.  On November 7, 2012, the bankruptcy court entered its Order granting Trustee's Supplemental Motion for Summary Judgment in the amount of $425,775.89, representing the principal amount of the $311,065.25 transfer from the Mortgage Store to Mano, including interest.  Doc. No. 12-3, AA Ex. C.  Final Judgment against Mano entered on November 9, 2012.  Doc. No. 12-4, AA Ex. D.

Mano filed its Notice of Appeal on December 6, 2012, and filed its Opening Brief on January 28, 2013.  Trustee filed an Answering Brief on February

15, 2013, and Mano filed its Reply on March 1, 2013.  A hearing was held on

March 20, 2013.  Simultaneous post-hearing briefing was filed by both parties on

April 8, 2013.

## III.  <u>STANDARD OF REVIEW</u>

The court must review de novo the bankruptcy court's decision on

summary judgment.  *In re Sabban*, 600 F.3d 1219, 1221-22 (9th Cir. 2010); *In re*

*AFI Holding, Inc.*, 525 F.3d 700, 702 (9th Cir. 2008).  "Summary judgment is to be

granted if the pleadings and supporting documents, viewed in the light most

favorable to the non-moving party, show that there is no genuine issue as to a

material fact and the moving party is entitled to judgment as a matter of law."  *In*

*re AFI Holding, Inc.*, 525 F.3d at 702 (citing Fed. R. Civ. P. 56(c)); *In re SNTL*

*Corp.*, 571 F.3d 826, 834 (9th Cir. 2009).

## IV.  <u>DISCUSSION</u>

In an earlier decision, the bankruptcy court determined that the

$311,065.24 transfer to Mano was fraudulent under 11 U.S.C. §§ 544(b) and 548,

and HRS § 651C-4.  This issue is not on appeal.  Rather, at issue is the bankruptcy

court's summary judgment determination that Mano was the initial transferee of

these funds.  Although the Mortgage Store technically transferred the funds to

Freeland, who then distributed the funds as required by the parties' HUD-1

9

Statement, the bankruptcy court determined that Mano was the initial transferee because it had dominion over the funds at the time they were transferred to Freeland.  Mano raises two arguments on appeal: (1) that Lindell, not Mano, was the initial transferee of the $311,065.24; and (2) even if Mano was the initial transferee of some of the funds, it was not the initial transferee of the entire amount.  The court addresses these arguments in turn.

## A.     Whether Lindell or Mano Was the Initial Transferee

The parties dispute whether Mano was an initial or subsequent transferee of the $311,065.24.  The court first outlines the relevant framework, and then addresses the facts presented.

### 1.     Framework

Whether Mano was an initial or subsequent transferee is not just a matter of semantics -- it affects the Trustee's burden in recovering these funds.  As provided in 11 U.S.C. § 550, an initial transferee is held strictly liable for such transfer, while a subsequent transferee is not liable if it took the transfer for value, in good faith, and without knowledge of the voidability of the transfer.[1]  *See In re*

---

[1]  Section 550 provides:
(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--

*Incomnet, Inc.*, 463 F.3d 1064, 1069 (9th Cir. 2006) ("Under § 550(a), '[t]he trustee's right to recover from an initial transferee is absolute.'" (quoting *In re Video Depot, Ltd.*, 127 F.3d 1195, 1197-98 (9th Cir. 1997)); *In re Bullion Reserve of N. Am.*, 922 F.2d 544, 547 (9th Cir. 1991) ("The 'good faith' defense of section 550(b) does *not* apply to the 'initial transferee' of the debtor or the 'entity for whose benefit such transfer was made,' and the trustee's power to recover from these entities under section 550(a)(1) is absolute.").

Although 11 U.S.C. § 550 does not define the term "initial transferee," the Ninth Circuit applies the "dominion" test in determining the initial transferee. *Incomnet* explains this test as follows:

> Under the dominion test, "a transferee is one who . . . has 'dominion over the money or other asset, the right to put the money to one's own purposes.'" [*In re Cohen*, 300 F.3d 1097, 1102 (9th Cir. 2002)] (citing *Bonded Fin. Servs. Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th

---

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from--

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
(2) any immediate or mediate good faith transferee of such transferee.

> Cir. 1988)); *see also In re Video Depot*, 127 F.3d at
> 1198; *In re Bullion Reserve*, 922 F.2d at 548.  The
> inquiry focuses on whether an entity had legal authority
> over the money and the right to use the money however it
> wished.  *See In re Cohen*, 300 F.3d at 1102; *Bonded Fin.
> Servs.*, 838 F.2d at 893-94.

463 F.3d at 1070.  For example, "[w]hen A gives a check to B as agent for C, then

C is the 'initial transferee'; the agent may be disregarded."  *Id.* (quoting *Bonded

Fin. Servs.*, 838 F.2d at 893).  This test stresses "the ability of the recipient to use

the money as it [sees] fit."  *Id.*

           This dominion test "strongly correlates to legal title" -- dominion is

"'akin to legal control (e.g., the right to invest the funds as one chooses)' and [is]

distinguished [] from 'mere possession.'"  *Id.* at 1073 (quoting *In re Cohen*, 300

F.3d at 1102).  As a result, "[i]n the vast majority of cases, possessing legal title to

funds will equate to having dominion over them."  *Id.*  The dominion test

nonetheless may assist in resolving "those unusual situations in which legal title to

funds and the right to put those funds to use have been separated."  *Id.* at 1074.

*Incomnet* recognized two primary situations where this may occur -- "(1) when an

entity has legal title as a formal matter, but legally does not have any discretion in

the application of funds; and (2) when an entity does not possess legal title, but

nevertheless has sufficient authority over the funds to direct their disbursement."

*Id.*  Under these circumstances, "*some* entity must have dominion over the

[funds]," and the initial transferee need not have total, full, or unfettered discretion over the funds.  *Id.* at 1075-76 (emphasis added).

### 2.   *Application*

The parties do not dispute that Freeland was not the initial transferee for purposes of § 550 -- courts have uniformly held that agents who receive funds as part of their duties to their clients, such as attorneys or escrow agents, are "mere conduits" that do have dominion over property.[2]  Rather, as issue is whether Freeland held the funds for Lindell or Mano.[3]  According to Trustee, Mano was the initial transferee because Freeland was Mano's attorney and therefore received the funds as an agent for Mano.  In comparison, Mano argues that Freeland acted as an escrow agent for both parties and therefore Lindell, as the buyer, was the initial transferee pursuant to *In re Presidential Corp.*, 180 B.R. 233 (9th Cir. B.A.P. 1995).  The bankruptcy court did not address whether Freeland was Mano's

---

[2] *See, e.g.*, *Matter of Coutee*, 984 F.2d 138, 141 (5th Cir. 1993) (determining that law firm was mere conduit); *In re Cypress Rests. of Ga., Inc*., 332 B.R. 60, 64 (Bankr. M.D. Fla. 2005) ("The term 'initial transferee' does not include professional intermediaries, such as banks and escrow agents, which are 'mere conduits' of the transfer and do not receive any benefit from the transfer."); *In re Presidential Corp*., 180 B.R. 233, 237 (B.A.P. 9th Cir. 1995) (determining that an "escrow agent did not have dominion or control over the funds because it was a mere conduit"); *In re Williams*, 104 B.R. 296, 299 (Bankr. C.D. Cal. 1989) ("An escrow company is merely a conduit through which funds flow from a purchaser to a seller.").

[3] There is also no dispute that Lindell did not automatically have dominion over the funds by merely causing the Mortgage Store to transfer the funds to Freeland.  Indeed, "[t]he mere power of a principal to direct the allocation of corporate resources does not amount to legal dominion and control."  *See In re Video Depot, Ltd.*, 127 F.3d 1195, 1199 (9th Cir. 1997).

attorney only or was also acting as an escrow agent for Lindell. Rather, the bankruptcy court determined that regardless of Freeland's role in the transaction, Mano was the initial transferee of the $311,065.24 because "all of Mr. Lindell's rights to cancel the transaction had expired and Mano had performed all of its preclosing obligations before the Debtor sent the money to Mr. Freeland." Doc. No. 12-4, AA Ex. E at ECF 9 of 10. The bankruptcy court reasoned that at the time of the transfer, Lindell had no power to cancel the transaction and no right to require Freeland or Mano to return the money such that Mano was unconditionally entitled to the money. As a result, the bankruptcy court determined that Mano and not Lindell had dominion over the money from the moment that the Mortgage Store parted with it.

The court, upon de novo review, agrees with this reasoning. Most importantly, at the time of the transfer of funds, Lindell was bound to honor the Contract -- that is, Lindell's termination period had expired and he was therefore required to comply fully with the terms of the Contract by proceeding with the purchase. Thus, when the Mortgage Store transferred the funds to Freeland, Lindell had no right to these funds. Rather, as between Lindell and Mano, Mano had dominion of the funds, regardless of the original conditions placed on how they would be used. *See Incomnet*, 463 F.3d at 1075-76 (rejecting that transfer of

funds which came with conditions for their use robbed the transferee of dominion of the funds).

In making this determination, the court recognizes that the Deed, dated January 19, 2009, was signed by Paulrajan Manoharan on January 19, 2009, but signed by Yalini Manoharan on January 20, 2009, the date of the transfer of funds.  Although the record fails to establish whether Yalini Manoharan signed the Deed before the Mortgage Store transferred the funds to Freeland, this task was at most ministerial and does not suggest that Lindell had dominion over the funds transferred from the Mortgage Store to Freeland.  Rather, Lindell had performed all the obligations required of him at the time of the transfer, and there is no evidence in the record that either Mano or Lindell could have withdrawn from the Contract as of this time.  Indeed, it appears that Lindell could have sought specific performance had Mano attempted to do so given that Lindell had satisfied all elements entitling him to specific performance of a real estate contract under Texas law.[4]  *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594 (Tex. 2008) (en banc) (stating the general rule that to be entitled to specific performance, "a party must show that he has complied with his obligations under the contract").

---

[4]  *See* Doc. No. 12-7, AA Ex. G at ECF 22 of 179 (providing that under certain circumstances, Buyer may enforce specific performance of Seller's obligations under this contract within ninety (90) days of Seller's Default").

And in any event, it is unclear if Yalini Manoharan's signature was even necessary to complete the transfer of the property. Paulrajan Manoharan alone signed and bound Mano to the Contract, *see* Doc. No. 12-7, AA Ex. G at ECF 26 of 179, and only one party signed the HUD-1 Statement on behalf of Mano. As recognized in *Incomnet*, "some entity must have dominion" over the funds, 463 F.3d at 1075, and an entity need not have total, full, or unfettered discretion over the funds to have sufficient dominion to be an initial transferee. Given that the transfer of funds occurred at a time when the contract was set in stone, and Freeland's remaining obligation was simply to disburse the funds, the court concludes that Mano, not Lindell, was the initial transferee.

In opposition, Mano argues that this reasoning is flawed in light of *Presidential*. In *Presidential*, the debtor transferred funds into an escrow account to pay for its principal's purchase of a residence, and a portion of these funds were used to pay the real estate agent's commission. 180 B.R. at 234-35. The Chapter 7 trustee sought to recover these funds from the real estate agent, asserting that it was the initial transferee and that the escrow agent was merely a financial conduit for the real estate agent. *Id.* at 235. *Presidential* held otherwise, determining that the escrow agent was a conduit for the buyer (*i.e.*, the debtor's principal) because, under applicable Washington state law, the escrow agent was considered an agent

16

of the buyer at the time of the avoided transfer.  *Id*. at 237-38.

       *Presidential* is distinguishable for several reasons.  As an initial matter, *Presidential* applied Washington state law in determining the role and duties of an escrow agent and therefore provides little assistance in determining the role of an escrow agent under Texas law.  Second, the persuasive value of *Presidential* is at best questionable given that it applied a "dominion and control" test relying upon equitable factors, which has since been rejected by the Ninth Circuit.  *See id.* at 238-39.  *Incomnet* explains that there are two separate tests -- a "dominion" test and a "control test," which "requires courts to step back and evaluate a transaction in its entirety to make sure that their conclusions are logical and equitable" -- and clarified that the more restrictive dominion test applies in the Ninth Circuit.  463 F.3d at 1070-71.  Finally, even if it has any persuasive value, *Presidential* is potentially distinguishable on its facts given that the debtor transferred the funds before all the conditions to the closing were met.  180 B.R. at 238.  In comparison, in this action all the conditions to closing may have already been met at the time of the transfer.

       Thus, the court finds that there is no genuine issue of material fact that Mano was the initial transferee of the funds from the Mortgage Store.

**B.      Whether Mano Was the Initial Transferee of the Entire Amount Transferred by the Mortgage Store**

Mano argues, in the alternative, that even if the court finds that Mano is the initial transferee as to *some* of the funds transferred to Freeland, it was not the initial transferee of the entire amount in light of the fact that Freeland transferred a portion of the funds ($34,635.42) to third parties on Lindell's behalf pursuant to the HUD-1 Statement.  *See* Doc. No. 8, Mano Br. at 17.  Mano therefore argues that at most, it was the initial transferee of $276,429.83 (*i.e.*, $311,065.25 minus the $34,635.42 in disbursements to third parties).  In opposition, Trustee argues, among other things, that Mano waived this argument by failing to properly raise it before the bankruptcy court.  The court agrees with Trustee.

In general, arguments not raised before the trial court are waived on appeal.  *See In re Magnacom Wireless, LLC*, 503 F.3d 984, 996 (9th Cir. 2007); *In re Eliapo*, 468 F.3d 592, 603 (9th Cir. 2006); *In re Burnett*, 435 F.3d 971, 975-76 (9th Cir. 2006); *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000).  "[N]o bright line rule exists to determine whether a matter has been properly raised below.  A workable standard, however, is that the argument must be raised sufficiently for the trial court to rule on it.  This principle accords to the [trial] court the opportunity to reconsider its rulings and correct its errors."  *Whittaker*

18

*Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992); *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010); *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989). Even where an issue is technically waived, the court may exercise its discretion to reach a waived issue in three circumstances:

> in the "exceptional case" in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, when a new issue arises while appeal is pending because of a change in the law, and when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d at 992 (quoting *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)).

The bankruptcy court did not address the argument Mano raises now for good reason -- Mano did not raise this argument in any meaningful way to the bankruptcy court. To be sure, during the two rounds of summary judgment motions before the bankruptcy court Mano did raise the fact that Freeland had distributed some of the funds it received from the Mortgage Store to third parties pursuant to the HUD-1 Statement. But Mano did not argue anywhere in its briefs to the bankruptcy court that these facts establish that Mano was the initial transferee of at most only $276,429.83 of the Mortgage Store's transfer. Rather, in its briefing, Mano presented the all-or-nothing argument that Freeland's

disbursements to third parties is evidence that Freeland was acting as an agent for both Lindell and Mano such that Lindell had dominion over *all* the funds.  *See* Doc. Nos. 12-9, AA Ex. I; 17-2, AA Ex. Y;[5] *see also* Doc. No. 17-4, AA Ex. AA at 8-9 (presenting same argument at the first summary judgment hearing).

Mano's failure to present this argument in *either* of its Oppositions to Trustee's Motions for Summary Judgment deprived Trustee any opportunity to respond to this argument, deprived the bankruptcy court of the opportunity to fairly address this issue, and functioned as a waiver of this argument.  *See Image Tech. Serv., Inc. v. Eastman Kodak*, 903 F.2d 612, 615 n.1 (9th Cir. 1990) (holding that plaintiff's failure to raise an issue in opposition to defendant's motion for summary judgment waived the issue); *Reliance Ins. Co. v. Doctors Co.*, 299 F. Supp. 2d 1131, 1154 (D. Haw. 2003) ("Failure to raise issues in opposition to summary judgment functions as a waiver" of the argument.); *see also Samica Enters. LLC v. Mail Boxes Etc., Inc.*, 460 Fed. Appx. 664, 666 (9th Cir. 2011) ("Arguments not raised in opposition to summary judgment or in the opening brief before this court

---

[5] That Mano never briefed the argument it now presents on appeal is especially glaring given that Trustee, in its Supplemental Motion for Summary Judgment, explained the possible result of Mano's argument "of whether the entire $311,065.25 could be avoided, based upon the fact that $34,635.42 was disbursed for expenses attributed to the Buyer."  Doc. No. 17-5, AA Ex. BB.  Trustee explained that under Mano's reasoning, Trustee "would still be entitled to recover the remaining $276,429.83."  *Id.*  Despite Trustee laying out the possible alternative argument for Mano, Mano failed to raise this argument in its Opposition to Trustee's Supplemental Motion for Summary Judgment.

are waived.").

Indeed, the closest Mano came to raising the argument it now makes on appeal was during the hearing on Trustee's Supplemental Motion for Summary Judgment, where it buried a single sentence arguably making this argument within its overall argument that Mano is not the initial transferee of the $311,065.25. Mano argued:

> And as a legal matter, with Mr. Freeland acting as the escrow, he is receiving those funds for Lindell, and even if it's only for an instant, and then it gets disbursed out, Mr. Freeland, until he makes those payments as required in that HUD-1, is an agent for Lindell in charge of those funds.  He can't disburse the whole funds to Mano, the whole 311 plus thousand that was wired.  He has to distribute certain of those funds that he received from Lindell or from the Mortgage Store on behalf of Lindell as instructed by Lindell.
> . . .
> And in fact, in this particular case the agreement is that when that property comes in it will be disbursed as Mr. Lindell has instructed.  And, Your Honor, not to concede any of the points, but in this Johnson case where there were certain amounts that were paid into escrow to pay a third party, in this case a lienholder, those amounts were deemed to have been received on behalf of the one party here, Elephant, who was the seller in that case, and those amounts were paid out, and they found that the initial transferee was Elephant.
> *And I think in this case, at a minimum, the amounts that Mano had no control over, the amounts that were paid for the insurance, for the escrow, the certain miscellaneous recording fees and miscellaneous fees to Freeland, that fits precisely in this situation where Mano*

*has no claim whatsoever to those funds. . . .*

*. . .*

I think the legal arrangement that we had here, and I think it does get into the factual issue of whether Mr. Freeland was the agent for both Mano and for Mr. Lindell, you know, a purely legal issue that he, even if only for an instant, received that money on behalf of Lindell and that from there he transferred the money -- you know, he is a dual agent, so you actually have a situation where you have from the debtor, Freeland as conduit to Lindell, and then Freeland as a conduit again to Mano.

So I think it is a case that we don't have anything that's specifically on point, but I think the fact remains that purely, as a matter of law, Mr. Freeland did act as the agent for Lindell and received that money on Lindell's behalf, even if for an instant.  And because of that the legal significance is that Mano is not the initial transferee and is the subsequent transferee.

Doc. No. 17-6, AA Ex. CC at 10-13 (emphasis added).

The court finds that Mano's single-sentence argument made during oral argument did not sufficiently raise to the bankruptcy court the argument Mano makes now that it is at most the initial transferee of $276,429.83 instead of the entire $311,065.25.  Indeed, reading this lone sentence in context of Mano's entire argument, it appears that Mano was simply trying to forward its overall argument that Mano was not the initial transferee of the entire $311,065.25.  The court will not engage in the level of parsing that would be necessary to find that Mano raised this argument before the bankruptcy court.  Indeed, a review of the hearing

22

transcript before the bankruptcy court highlights that Mano did not raise the specific argument it now presents sufficiently for the bankruptcy court to rule on it. And in any event, the bankruptcy court had no obligation to address arguments raised for the first time at a hearing, *see, e.g.*, *Donna S. v. Hawaii*, 2012 WL 4017449 (D. Haw. Sept. 12, 2012) ("The court will not address arguments raised for the first time in a Reply, much less at a hearing."), and certainly had no clear notice of such argument, whether in the briefing or during the oral argument. Mano therefore waived this argument.

The court further finds that there is no basis for the court to exercise its discretion to reach Mano's waived argument that it was the initial transferee of only a portion of the $311,065.25. Mano offers no reason why it failed to properly present this issue to the bankruptcy court, much less any argument why the court should excuse Mano's waiver. Rather, Mano asks this court to address, for the first time, its novel legal argument that the single transfer to Freeland can viewed as made up of several separate transfers to multiple entities. Addressing this argument would also require this court to determine factual questions not developed before the bankruptcy court, including whether Lindell or Mano benefitted from each individual transfer, and how the $311,065.25 should be divided where Lindell was credited with various amounts (for tax and rent

payments) on the HUD-1 Statement.  These unresolved issues emphasize the very reasons for finding a waiver -- these legal and factual issues should have been developed and presented to the bankruptcy court to address in the first instance.

In sum, Mano made the strategic decision to present to the bankruptcy court the all-or-nothing argument that it was not the initial transferee of the entire $311,075.25.  Having lost before the bankruptcy court, Mano now attempts to mitigate its damages by presenting a new argument it could have just as easily presented to the bankruptcy court in the first instance that it is the initial transferee of at most only $276,429.83.  Mano has no excuse for failing to present this argument to the bankruptcy court, and the waiver doctrine prevents such a second bite of the apple.  The court therefore finds that Mano waived this argument.

///

///

///

///

///

///

///

///

## V. <u>CONCLUSION</u>

Based on the above, the court AFFIRMS the bankruptcy court's

November 9, 2012 Final Judgment Against Defendant Mano-Y&M, Ltd.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 16, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Mano Y&M., LTD v. Field et al.*, Civ. No. 12-00653 JMS/KSC, Order Affirming Bankruptcy Court's November 7, 2012 Order Granting Supplemental Motion for Summary Judgment Against Defendant Mano-Y&M, Ltd.